## MAY v. MAY.

1. Where M. dies, leaving a widow, and three children, each of whom had been advanced in their father's life time, and, on a final settlement of the estate, one of the children brings his advancement into hotchpot, but the other two refuse to do so, the distributive share of the widow is not increased thereby, but is to be ascertained by reference to the *number* of children, whether all of them share in the distribution or not.

Error to the Orphans' Court of Greene. Before the Hon. Sydenham Moore, Judge.

THIS case arose upon a final settlement in the orphans' court of Greene county, of the estate of William May, deceased. From the record it appears, that the deceased left a widow, the plaintiff in error, and three children, viz : the defendant in error, Moody H. May, and John H. May ; that on the final settlement of the estate of said William May, deceased, there was found in the administrator's hands, subject to distribution, the sum of $1,723 65 ; that each of said children had received advancements from their father in his lifetime ; that the defendant in error, who had been advanced two slaves of the value of $500, brought his said advancement into hotchpot, but the said Moody H. and John H. refused to do so, &c.

On this state of facts the court decided, that the plaintiff in error was entitled to only one-fourth of the sum of money in the hands of the administrator, and rendered a decree accordingly. This is now assigned as error.

H. I. THORNTON, for plaintiff in error.

In this case there is but one error assigned. In the settle-ment of the estate in the orphans' court, the widow was allowed in the distribution, only one-fourth ; there being three children, and two of them having appeared and waived their claim to any share, on the suggestion that they had been advanced by the intestate.

The main point to be settled is, does the act of distribution intend to make the widow homologous with the children in the matter of distribution, or merely to make the number of children, without regard to their being distributees, or not, a criterion to ascertain the amount to be allotted to her. To maintain the first part of this alternative, I cite the case of Edings v. Long, 10 Ala. 205.

If the widow is identified with the children as a distribu-tee, she ought to have all the benefits of that character ; and but for the stringent terms of our statute, limiting her share to the residue of the estate left after the payment of the debts, it might be well contended that she would be entitled to the benefit of advancements, as is the case in North Carolina.— See Taylor's Rep. 213.

I rely strongly on the distinction, where there is a certain

fixed proportion of the estate left by the deceased to be allotted to the widow, and where she is to receive a share that is dependent on the number of children, distributees.   The rule, under the English statute—under the customs also of York and London—and in many of the states, where a fixed part of the estate left by the deceased, is given to the widow, I admit to be, that where the advancements are brought in, the widow gets no benefit of them, because they form no part of the estate left by her deceased husband, to which alone she is expressly limited.   So also, I admit the rule to be, under the same state of law, that if advancements be brought in, but such advanced children waive any claim, it is immaterial to the widow what becomes of the remainder of the estate, left after she received her certain and fixed amount of what was left by her husband.   In conformity with this view is 20th Pick. 67, and Williams's ex'rs, vol. 2, chapters on Distribution under statute, and by the custom, &c.

My conclusion is, that where equality and *a fortiori,* where more than equality is established by law, between the widow and the children, the amount varying with the number of the latter, then the widow should in the distribution, get as much as any child gets, of the subject of distribution, which in this state is the surplus, or residue of personal estate, left after paying the debts of the deceased.

J. B. CLARKE and B. F. PORTER, contra.

The case of Logan v. Logan, adm'r, 13 Ala. 653, we consider as conclusive of the case.   If the widow can claim nothing from an advancement when brought into hotchpot, it necessarily follows that her rights cannot be enlarged by any one one or more of the children declining to bring in their advancements, and come into the distribution.

The widow's share is necessarily ascertained before the question of advancements can come up.   The counsel for the plaintiff imagines, that the children mentioned in the statute of 1826, are those who come into the distribution ; but this idea receives no countenance from the statute itself. Her share is evidently to be ascertained by first ascertaining the number of children, and descendants of deceased children, if any, left by the decedent at his death, whether they

choose afterwards to come into the distribution with the other children or not.    This is the necessary import of the language used.

This position is sanctioned by Williams on Ex'rs, 2 vol. 1102, edition of 1841, Library copy, 949, under the custom of Londen, where it is said, "if one of several children be fully advanced, the effect is, to remove that child entirely out of the way, and to increase the share of the others, and not of the dead man's part." This being a rule under the custom, authorizes us to apply it in the construction of our statute, as the construction of our statute is properly governed by the construction of the English statute, which has been always governed by the practice under the custom. See Kircudbright v. Kircudbright, 8 Ves. 64.

The idea that in ascertaining the share of a widow who dissents from the will of her husband, a child who is disinherited under the will, could not be noticed as a child, may have credit for its originality, but not as a canon of distribution.

COLLIER, C. J.—In Logan v. Logan, adm'r, 13 Ala. R. 653, it was decided that the widow can claim nothing from advancements made by the husband to his children, and by them brought into hotchpot. This conclusion was attained upon the construction of the statute of distributions of 1826, and of the acts of 1822 and 1828, which provide for children of intestates, who have been advanced, bringing their advancements into hotchpot, and the mode of valuing such advancements, &c. We also examined the English statute of distributions of the 22 and 23 Car. 11, ch. 10, and kindred enactments in several of the states of the Union, with decisions adjusting their interpretation. It was added as a clear deduction from these, that " our act of 1826, we have seen declares, the widow's share in the estate of her deceased husband, which shall be left after the payment of his debts, and the previous statutes of distribution of 1806, and 1812, only operated upon the surplus. The statute of 1822, which we have cited, requires the children of the intestate to bring their advancements into hotchpot, where they "shall choose to come into the partition of the estate with the other parce-

ners." What is said in the act of 1826 in respect to the widow being entitled to "a child's part," where there are not more than four children, is restricted by the preceding part of the section to "a child's part," or, in other words, to a share of the decedent's estate proportioned to the number of children, which may remain subject to distribution after his debts are paid. This conclusion is not attained by an application of the principles of construction, but is the clear result of the language employed."

The English statute of distributions is quite as expansive in its provisions as the several enactments of this state, and as it respects the effect of advancements, may furnish a guide for their construction. After providing in what manner the estate of a person dying intestate shall be distributed between his wife and children, it directs that advancements made to any of the children by the intestate, shall be taken into the account, if those thus advanced shall claim a share in the estate, so as to make the portions allotted to the children, or their representatives, equal, as near as may be. 2 Wms. on Ex'rs, 906. "The end and intent of the statute was, to make the provision for all the children of the intestate equal, as near as could be estimated." Id. 917, 918. "If one of the several children be fully advanced, the effect is to remove that child entirely out of the way, and to increase the shares of the others, and not of the dead man's part. If any of the children shall have been advanced partially, they must bring their portion into hotchpot, before they can derive any advantage from the custom. But such partial advancement, like a full advancement, shall be brought into hotchpot with the orphanage part only. Therefore, the children who have been partially advanced, shall bring their portion into hotchpot with the other brothers and sisters only, and not with the widow : for the principle is, as also with respect to the statute of distributions, to make an equality among the children, and not to benefit the widow. Id. 949. See also, Id, 919; 2 Step. Com. 255.

This equitable provision, it has been said, was derived in England from the *collatio bonorum* of the imperial law ; which it certainly resembles in some points, though it differs widely in others. But with regard to goods and chattels, it is

"part of the ancient custom of London, of the province of York, and of the sister kingdom of Scotland; and with regard to the lands descending in coparcenary, that it has always been, and still is, the common law of England, under the name of hotchpot." 2 Wms. on Ex'rs, 918. These are the customs to which reference is made by the same learned author in the preceding paragraph. See Lord Kircudbright v. Lady Kircudbright, 8 Ves. 64.

From this view of the law, we think it obvious, the distributive share of the widow in the estate of her deceased husband, under the act of 1826, where there are not more than four children, is to be ascertained by a reference to the number of children. The extent of their advancements, or whether they shall elect to bring them into hotchpot, can have no influence upon the share to be allotted to her. This is ascertained by the statute, and is a "child's part," supposing all the children to participate equally with herself in the estate which may remain after the payment of the debts. She can neither gain nor lose by the advancements being brought in or withheld. The children advanced must elect whether they will come into the distribution, and cannot be coerced; if they come in, the court will see that they share equally in the fruits of their father's acquisitions. Equalization of their portions, is the object to be effected by bringing ing their advancements into hotchpot, and the widow, we have seen, can derive no benefit from them.

If any of the children have been advanced, and decline to come in for a further portion, the reasonable inference is, that they would not be benefitted by such an arrangement, or if they would, that they are willing to yield up the prospect to the other children. If the former motive influenced them, and they really have been fully advanced, then the residue of the estate, after allotting to the widow the share which the statute prescribes, would be necessary to make the children who seek a distribution, equal participants with the others in their father's bounty. If the latter motive supposed, prompted the advanced children to ask nothing more, then the widow can claim nothing from an act of liberality which did not inure to her benefit. This view will serve to show, that the term "children," where it occurs in the statute, can-

not be restricted to such as may come in for a distributive share of the estate. There is nothing in the letter of the act to require such a construction, and we think it unauthorized by the judicial expositions of such enactments elsewhere.

As the case at bar arises upon the distribution of an intestate estate, it is not necessary to inquire whether, where the widow dissents from her husband's will, a disinherited child shall be numbered among the testator's children, in apportioning the widow's share. The result of what we have said is, that the judgment of the orphans' court must be affirmed.